UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                   CASE NO.:  8:12-CR-45-T-35AEP

SAMI OSMAKAC

**GOVERNMENT'S MOTION IN LIMINE TO
LIMIT QUESTIONING CONCERNING UCE TRAINING
DUE TO LAW ENFORCEMENT PRIVILEGE**

The United States, by and through its undersigned counsel, now files this Motion

*in Limine* to limit questioning regarding the training of the Federal Bureau of

Investigation (FBI) undercover employee (UCE) in this matter.   The government

anticipates that the defendant will attempt to elicit testimony at trial relating to the

training of the UCE in this case.  The government herby asserts the "law enforcement

sensitive" qualified evidentiary privilege regarding such questioning.  Pursuant to this

qualified privilege, the government submits that this line of questioning should be limited

because the FBI's training program for its UCEs is protected by the law enforcement

privilege.  Further, such questioning will elicit irrelevant information that has the

potential to cause unnecessary delay and jury confusion.  Thus, the government requests

that this Court limit the defendant's cross-examination concerning the UCE's training.

At the status conference in this matter, defense counsel indicated that he intended

to question the UCE regarding his/her training.  Such questioning should be limited to

protect the effectiveness of UCEs in law enforcement.  By this motion, the government

asserts that excessive questioning regarding the UCE's training will run afoul of the law

1

enforcement sensitive qualified evidentiary privilege.  Moreover the government submits that such questioning is irrelevant and has the potential to mislead the jury and cause undue delay.

### a.  The Qualified Law Enforcement Privilege Generally

The Supreme Court, in *United States v. Roviaro*, recognized an "informer's privilege" that protects the identity of government informants and allows the government to withhold from disclosure the identities of persons who furnish information to law enforcement officers.  The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement.  *United States v. Roviaro*, 353 U.S. 53, 59 (1957).

Courts, including the Eleventh Circuit, have since extended the *Roviaro* qualified privilege to cover investigative techniques, on-going investigations, and surveillance devices.  *See e.g., United States v. Van Horn*, 789 F.2d 1492, 1507 (11th Cir. 1986) ("We recognize a qualified privilege not to disclose sensitive investigative techniques."); *United States v. Green*, 670 F.2d 1148, 1155 (D.C. Cir. 1981) (applying the *Roviaro* privilege to surveillance locations); *In re The City of New York*, 607 F.3d 923, 942 (2d Cir. 2010) (holding that the law enforcement privilege is "grounded in well-established doctrine and is widely recognized by federal courts.").

The privilege is designed, *inter alia*, to prevent disclosure of law enforcement techniques and procedures that, once revealed, could risk future circumvention of the law or compromise of the technique.  As the D.C. District Court explained:

> The federal law enforcement privilege is a qualified
> privilege designed to prevent disclosure of information that

> would be contrary to the public interest in the effective functioning of law enforcement. [It] serves to preserve the integrity of law enforcement techniques and confidential sources, protects witnesses and law enforcement personnel, safeguards the privacy of individuals under investigation, and prevents interference with investigations.

*Tuite v. Henry*, 181 F.R.D. 175, 176-177 (D.D.C. July 31, 1998) (unpublished), *aff'd*, *Tuite v. Henry,* 203 F.3d 53 (D.D.C. 1999); *see also In re Dep't of Investigation of the City of New York*, 856 F.2d 481, 483-84 (2d Cir. 1988) ("The purpose of this privilege is to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witnesses and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation").

The scope of the law enforcement privilege is broad.  Courts have applied the law enforcement privilege to protect from disclosure the subject and targets of on-going investigations.  *See In re Dep't of Investigation,* 856 F.2d at 484 (applying the privilege to confidential sources, witnesses, and persons involved in an investigation); *Tuite*, 181 F.R.D. at 176-77 (holding that the law enforcement privilege serves to safeguard the privacy of individuals under investigation and prevents interference with investigations). The law enforcement privilege has also been recognized to protect the nature, specifications, locations, and means of concealment of electronic surveillance equipment. In *Van Horn*, the Eleventh Circuit held that the law enforcement privilege "applies equally to the nature and location of electronic surveillance equipment[]" to include the "precise locations where surveillance devices are hidden or their precise specifications." 789 F.2d at 1508.  *See also*, *United States v. Harley*, 682 F.2d 1018 1020–21 (D.C.

Cir.1982) ("We now hold that the surveillance location privilege, like the informer's privilege, applies at trials[]"; *United States v. Green*, 670 F.2d 1148, 1155 (D.C.Cir.1981) (same).

### b. Asserting a Qualified Law Enforcement Privilege

To assert a law enforcement privilege, the party asserting the privilege bears the burden of demonstrating that the material the government seeks to protect is the type of material that the law enforcement privilege is intended to protect. *See In re The City of New York*, 607 F.3d 923, 940-48 (2d Cir. 2010).  Once the party asserting the privilege successfully shows that the law enforcement privilege applies, "there ought to be a pretty strong presumption against lifting the privilege." *Id*. at 945 (quoting *Dellwood Farms v. Cargill*, 128 F.3d 1122, 1125 n. 22 (7th Cir. 1997)).

The court must balance the public interest in non-disclosure against the need of a particular litigant for access to the privileged information. *See In re The City of New York*, 607 F.3d at 948; *see also Dellwood Farms*, 128 F.3d at 1125 (holding that the actual determination of the existence of the law enforcement sensitive privilege is a "particularistic and judgmental task" involved in balancing the "need of the litigant who is seeking privileged investigative materials ... against the harm to the government if the privilege is lifted.").

To rebut the presumption, the party seeking disclosure must show (1) that its request is "non-frivolous and brought in good faith," (2) that "the information sought is [not] available through other discovery or from other sources," and (3) that there is a "compelling need" for the information relevant to the party's case. *Id*. at 948; *see*

*Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D. Pa. 1973); *Tuite*, 181 F.R.D. 175 (D.D.C. 1998); *In re Sealed Case*, 856 F.2d 268, 272 (D.C. Cir. 1988). Even if the party seeking disclosure successfully rebuts (by a showing of, among other things, a "compelling need"), the court must then weigh the public interest in non-disclosure against the need of the litigant for access to the privileged information before ultimately deciding whether disclosure is required. *See In re The City of New York*, 607 F.3d at 948. If the court determines that the law enforcement privilege is not sufficient to protect disclosure of the materials at issue, the materials must be disclosed. *See id.* at 949.

### c.   *The Assertion of a Law Enforcement Privilege in this case*

This Court should limit questions related to the training of FBI UCE's because this information is properly protected by the law enforcement qualified evidentiary privilege.  Revelation of details regarding such training would reduce the effectiveness of valid law enforcement techniques and could interfere with on-going investigations. *See In re Dep't of Investigations*, 856 F.2d at 483-84 ("The purpose of this privilege is to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witnesses and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation").

The FBI asserts a law enforcement privilege over its UCE training program because the release information regarding the training will adversely impact and compromise future investigations.  For instance, a criminal defendant armed with knowledge of the training could learn to identify and avoid FBI UCEs.  This topic is protected by the law enforcement privilege, and the defendant's cross examination

regarding it should be limited to those topics for which he has met the criteria set forth above to overcome the law enforcement privilege.

### d. Defendant is not entitled to unlimited questioning regarding UCE training.

A district court has wide latitude to limit the scope of cross-examination where a line of inquiry calls for irrelevant information. *United States v. Carter*, 760 F.2d 1568, 1581 (11th Cir. 1985) ("Limitations on cross-examination are left to the sound discretion of the district court and as long as the restriction does not interfere with the defendant's right of confrontation, such limitations are permissible"). The Sixth Amendment entitles a defendant to confront an adverse witness, including through cross-examination. *See e.g., Wasko v. Singletary,* 966 F.2d 1377, 1381 (11th Cir. 1992). However, "this right only protects cross-examination that is *relevant;* the Court may limit a defendant's cross-examination when he seeks to elicit matters that are irrelevant." *United States v. Russell*, No. 07-20338-CR, 2008 WL 3200808 at *2 (S.D. Fla. Aug. 7, 2008). "It is axiomatic that the right to cross-examination is not absolute because the information sought to be elicited must be relevant." *United States v. Diaz,* 26 F.3d 1533, 1540 (11th Cir. 1994) (internal citations omitted).

Specifically, courts have upheld limitations on cross-examination regarding on-going investigations and law enforcement techniques because such inquiry is irrelevant. *United States v. Carmichael*, 373 F. Supp. 2d 1293, 1297 (M.D. Ala. 2005) ("[I]n most cases, including this one, evidence questioning the adequacy of various aspects of the government's investigation itself—as opposed to the adequacy of the evidence gathered as a *result* of that investigation—is either irrelevant or of very little probative value, as it

improperly shifts the jury's focus from the accusations against the defendant to accusations against the police."); *United States v. Patrick,* 248 F.3d 11 (1st Cir. 2001) (evidence suggesting police failed to investigate fully leads on other potential suspects during investigation was highly prejudicial and irrelevant where there was no indication that such leads would have pointed to the guilt of another suspect; "such speculative evidence of the inadequacy of the police investigation would have [improperly] shifted the jury's focus"); *United States v. Robbins*, 197 F.3d 829, 845 (7th Cir. 1999) (upholding district court's limit on cross-examination of DEA witness regarding the extent of the investigation because it was of "marginal relevance."); *United States v. Cordova,* 157 F.3d 587, 593 (8th Cir. 1998) (upholding trial court's decision to limit defendant's cross-examination of government agent with regard to how he conducted his investigation where such evidence "was not only irrelevant, but [any] relevance was substantially outweighed by the possibility of misleading the jury in the case"); *United States v. McVeigh,* 153 F.3d 1166, 1192 (10th Cir. 1998) ( "[U]nder our system of criminal justice, the issue submitted to the jury is whether the accused is guilty or not guilty. The jury is not asked to render judgment about non-parties, nor is it normally asked to render a verdict on the government's investigation"); *United States v. Veal,* 23 F.3d 985, 989 (6th Cir. 1994) (upholding a trial court's refusal to allow a defendant to show that the government's investigation had been "sloppy" because "the jury would not be called upon to determine whether the government's investigation had been good or bad").

Here, the government anticipates that the Defendant will attempt cross-examine the UCE extensively regarding his/her training. For instance, at the status conference in this matter, the defendant indicated that he intended to elicit information regarding

7

whether the UCE was trained to entrap individuals or to "target" specific types of individuals. Such questioning is a mere fishing expedition, as the defendant has no evidence that this is the case, nor is it the case. This type of blind inquiry, however, is objectionable once the law enforcement privilege is properly asserted; the burden shifts to the defendant to show that the line of inquiry he wishes to pursue is necessary, a showing the defendant cannot make here.

Further, this line of questioning will elicit irrelevant information. Information regarding the FBI's UCE training program will not inform the jury of any fact related to the Defendant's guilt or innocence, nor provide information to support a defense to the charged offenses. Any information gleamed from such an inquiry will have little to no probative value. Nor will the anticipated line of questioning serve any proper purpose of cross-examination. *See Maryland v. Craig*, 497 U.S. 836, 845 (1990) (holding that the Confrontation Clause serves to "ensure the reliability of evidence against a criminal defendant by subjecting it to rigorous testing..."); *United States v. Maxwell*, 579 F.3d 1282, 1296 (11th Cir. 2009) ("A Defendant's confrontation rights are satisfied when the cross-examination permitted exposes the jury to facts sufficient to evaluate the credibility of the witness and enables defense counsel to establish from a record from which he properly my argue why the witness is less then reliable.") (quotation omitted).

Moreover, where the purpose of such examination is to suggest failures of law enforcement or to cast blame on others, Court has consistently upheld the restriction of such questioning. For example, in *United States v. Register*, the Fifth Circuit held that that cross examination of undercover agent on "'proper investigation techniques' ostensibly to show that the failure to employ such techniques in investigating [the

8

Defendant's] involvement cast some doubt on his guilt…was irrelevant." 496 F.2d 1072, 1080 (5th Cir. 1974). The court determined that "[t]he jury's evaluation of the accuracy of the evidence produced by that investigation should be the measure of its quality" rather than the undercover agent's answer to questions about the quality of the investigation. *Id.; see also United States v. Spector*, 793 F.2d 932, 939 (8th Cir. 1986) (affirming district court's restriction on cross-examination of informant regarding "other investigations unrelated to the instant conspiracy" where the witness was subject to "broad" cross-examination); *United States v. McVeigh,* 153 F.3d 1166, 1192 (10th Cir. 1998) ( "[U]nder our system of criminal justice, the issue submitted to the jury is whether the accused is guilty or not guilty. The jury is not asked to render judgment about non-parties, nor is it normally asked to render a verdict on the government's investigation").

Lastly, such a line of inquiry should be excluded because any minimal probative value of the information is vastly outweighed by its potential to confuse the jury and cause undue delay. *See .e.g., Delaware v. Van Arsdal,* 475 U.S. 673, 679 (1986) (" trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."); *Robbins*, 197 F.3d at 845 (upholding district court's limit of cross-examination a DEA agent about the extent of his investigation because "the question at issue…might confuse the jury and cause it to speculate about what evidence is not before the jury."); *United States v. Cordova*, 157 F.3d 587, 594 (8th Cir. 1998) (upholding trial judge's decision to limit cross-examination of DEA agent after permitting some questions about the quality of the investigation but

limiting further inquiry because 'any relevance was substantially outweighed by the court's concern about undue delay and the possibility of misleading the jury about the issues in this case."); *and* FED. R. EVID. 403 ("The court may exclude evidence if its probative value is substantially outweighed by a danger of…confusion the issues, misleading the jury, undue delay, [or] waste of time…").

### CONCLUSION

The government respectfully requests that this Court limit the defendant's cross-examination of the UCE regarding his/her training to protect the law enforcement sensitive information at issue here.

Respectfully submitted,

A.  LEE BENTLEY, III
Acting United States Attorney


By:    *s/Sara C. Sweeney*
SARA C. SWEENEY
Assistant United States Attorney
United States Attorney No. 0000119
400 North Tampa Street, Suite 3200
Tampa, Florida  33602
Telephone:  (813) 274-6000
Facsimile:  (813) 274-6178
E-mail:  sara.sweeney@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on October 7, 2013, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

George E. Tragos, Esq.

By:    */s/ Sara C. Sweeney*
       SARA C. SWEENEY
       Assistant United States Attorney
       USA No. 119
       400 North Tampa Street, Suite 3200
       Tampa, Florida 33602
       Telephone:    (813) 274-6000
       Facsimile:    (813) 274-6178
       E-Mail: sara.sweeney@usdoj.gov