# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

UNITED STATES OF AMERICA,

                            Crim. Case No. 8:12-cr-45-T-35AEP

v.

SAMI OSMAKAC,
                Petitioner,

_____/

## MOTION FOR RELIEF UNDER THE FIRST STEP ACT
## AND COMPASSIONATE RELEASE

COMES NOW, the defendant Sami Osmakac in this case, processing pro-se and moves the court to resentence him under the First Step Act of 2018 (FSA 2018). In support thereof, the following is stated:

**Relevant Facts and Background**:

Osmakac was convicted for attempting to carry out a terrorist plot in Tampa, Florida and for possessing a firearm not registered to him. As early as December 2010, the Federal Bureau of Investigation ("FBI") conducted surveillance of Osmakac, authorized pursuant to the Foreign Intelligence Surveillance Act ("FISA") and approved by the FISA Court. 50 U.S.C. § 1801, et seq. The FBI surveillance showed that Osmakac had been expressing extremist Islamist views

1

and planning to conduct a "payback" attack for the United States' killing of Osama
Bin Laden.

A follow-up FBI undercover investigation revealed that Osmakac had also been
acquiring firearms, grenades, and materials for a makeshift car-bomb. On January
7, 2012, FBI agents arrested Osmakac before he could carry out his plot. On June
10, 2014, following a 10- day trial, a jury convicted Osmakac of attempting to use
weapons of mass destruction against U.S. persons or property, in violation of 18
U.S.C. § 2332a(a)(2) ("Count 1"), and possession of an unregistered firearm, in
violation of 26 U.S.C. §§ 5861(d), 5871 ("Count 2").

After a trial, the district court sentenced Osmakac to 480 months' imprisonment on
Count 1- and 120-months' imprisonment on Count 2, to run concurrently. See,
United States v. Osmakac, 868 F.3d 937, 942 (11th Cir. 2017).

During the pre-trial proceedings, court-appointed examiners evaluated the
defendant for competence to stand trial on three different occasions. Each time,
these examiners found Osmakac competent. After conducting multiple hearings,
the Court also found Osmakac competent to proceed based on these reports.

The defense-retained experts also evaluated the defendant's mental state at the time
of the offenses. Both doctors found that Osmakac was not insane **but was
someone who could be easily influenced**, which was a feature of Osmakac's
entrapment defense.

At his trial, Osmakac argued, among other things, that he was entrapped and that
he was particularly susceptible to entrapment due to his mental condition. In
support of this defense, counsel presented testimony from Drs. Northrup and
McClain, the mental health experts he retained.

2

Dr. Northrup testified that Osmakac had "schizoaffective disorder," a "severe" mental illness, and suffered from delusions and hallucinations. Based on these diagnoses, Dr. Northrup opined that Osmakac was more likely than the average person to be "susceptible," that is, "controlled by someone else's will." (Id.) Dr. McClain testified that Osmakac had major depression, psychotic disorder, and posttraumatic stress disorder. She opined that "because of the mental disorders that the Defendant suffers from, he is more susceptible to undue influence."

Despite counsel's ardent defense of Osmakac, the jury found him guilty. Osmakac appealed his judgment and his judgement were affirmed. United States v. Osmakac, 868 F.3d 937, (11th Cir. 2017).

Thereafter, following his unsuccessful appeal, Osmakac seeks to have his sentence vacated pursuant to 28 U.S.C. § 2255. The United States concedes that the Motion to vacate is both timely and cognizable. But it was denied by this court.

## PRELIMINARY STATEMENT

As a preliminary matter, Osmakac respectfully requests that this Court be mindful that pro se pleadings are to be construed liberally. See, Estelle v. Gamble, 429 U.S. 97,106 (1976); and Haines v. Kerner, 404 U.S. 519, 520 (1972) (same).

Osmakac 's total sentence of 480 months (without parole), is extraordinary. He has been in prison for approximately 10-years for his crime.

In this petition, Osmakac claims he has done everything in his power to rehabilitate himself as demonstrated by his genuinely exceptional accomplishments and meritorious prison record. That he does not seek to justify, diminish, or detract

from the seriousness of his offenses. And he unequivocally accepts responsibility for his criminal conduct.

There is no excuse for Osmakac's past actions, today he understands, and he has made a conscious decision to head down road of self-betterment. In his pursuit of rehabilitation, he made exceptional strides in bettering himself. Osmakac' s record of rehabilitation can be considered extraordinary, and spells out what Congress intended when it stated that a sentence should be sufficient but not greater than necessary to achieve the goals of sentencing one of which is rehabilitation. He has completed numerous rehabilitative programs. Osmakac has also maintained steady employment while in prison as well with excellent work reports.

In sum, Osmakac was given an unusually long sentence for his crime, and he has compiled a remarkable record of rehabilitation showing that if released, he is not a danger to the public.

This case presents the urgent issue of defendants' eligibility for reduction in sentence (colloquially known as "compassionate release") following the changes to § 3582(c)(1)(A) by the First Step Act of 2018 ("FSA").

The Second, Fourth, Fifth, Sixth, Seventh, Ninth, Tenth, and D.C. Circuits have held that district courts are free to exercise discretion to grant compassionate release to defendants for any "extraordinary and compelling" reason, so long as the reduction is "warranted" after reconsideration of the § 3553(a) factors.

That said this motion is crucial to promote nationwide uniformity in this important aspect of federal sentencing. Since the FSA expanded compassionate release, courts nationwide have granted thousands of reductions.

It is respectfully submitted that this Court's decision could create an unfair discrepancy across the nation and deprives Osmakac of the opportunity for a second look at his case.

Compassionate release gives courts an opportunity to take a second look at sentences to account for unusual and changed circumstances. This consideration—sure to arise thousands more times as individuals make use of the FSA's recently enacted provisions—is well within judges' core competence. As the Commission has noted, "[t]he court is in a unique position to determine whether the circumstances warrant a reduction." U.S.S.G. § 1B1.13 & comment. (nn.1, 4); U.S.S.G. Amend. 799 (Nov. 1, 2016).

At sentencing, judges consider the nature and circumstances of the crime committed, the defendant's role in the offense, and the criminal history of the defendant, among other things. See 18 U.S.C. § 3553; Federal Sentencing Guidelines Manual (2018). They rely on guidance reflecting society's current understanding of criminal culpability and punishment. But what judges can't confidently measure at sentencing is an individual's capacity for change. See Shon Hopwood, Second Looks and Second Chances, 41 CARDOZO L. REV. 83, 85 (2019).

Even people who commit serious crimes are not beyond rehabilitation. See, e.g., United States v. Jackson, 3:90-cr-85-MOC-DCK, 2021 WL 2226488, at *5-6 (W.D.N.C. June 2, 2021) (numerous letters of recommendation from BOP staff praising "the level of growth and maturity that I have found rare in this environment and in my opinion very commendable"); Michael Gordon, After 30 years, have 3 NC crack gang members repaid their debt? A judge to decide., Charlotte Observer, May 12, 2021, https://bit.ly/3ehjXzw; United States v. Clausen, No. Cr. 00-291-2, 2020 WL 4260795, at *8 (E.D. Pa. July 24, 2020)

(finding "remarkable record of rehabilitation" despite "de facto life sentence" documented by seventeen letters of recommendation from BOP staff). Professor Hopwood himself was convicted of bank robbery and served a lengthy sentence. But he later graduated from law school, clerked on the D.C. Circuit, and became a member of the Georgetown Law Center faculty and the Bar.

The availability of a second chance through compassionate release can incentivize individuals serving seemingly hopeless sentences to rehabilitate themselves in ways they might otherwise never have attempted. At sentencing, federal judges also cannot predict how society's attitudes toward punishment and culpability may change. Over the last few decades, Congress has enacted several measures that reduce sentences prospectively. See, e.g., Fair Sentencing Act of 2010, Pub. L. No. 111-220, § 2(a), 124 Stat. 2372, 2372 (reducing threshold for crack cocaine sentences); First Step Act of 2018, Pub. L. No. 115-391, § 403, 132 Stat. 5194, 5221-5222 (reducing mandatory minimum sentence for first offenders of 18 U.S.C. § 924(c) offenses). As Congress legislates to account for changed views on punishment, many individuals are left serving federal prison sentences far longer than society deems necessary for the same conduct today. Compassionate release allows judges to make individualized determinations for select persons when Congress has declined to make sentencing changes broadly retroactive. Allowing judges, the discretion to recognize extraordinary and compelling reasons beyond those articulated in the Statement permits, for deserving individuals, the harmonization of new views on criminal punishment with old sentences. This case presents an ideal vehicle for the Court to provide needed guidance to incarcerated persons and practitioners hoping to take advantage of the FSA's opportunity for second chances. It is vital that practitioners and their clients understand what circumstances judges may consider extraordinary and compelling. It is equally

6

crucial that persons across the nation—no matter their place of sentencing—have equal grounds of consideration.

In sum, it is respectfully submitted that this Court's opinion is out of sync with a majority of Circuits and harms those whose circumstances merit reconsideration of the case, and is not consistent with Congress's intent.

## **Discussion**

## I.    **OSMAKAC'S MEDICAL CONDITION:**

Osmakac's Medical Conditions and records obtained from the BOP reflects that the he has "schizoaffective disorder," a "severe" mental illness, and suffered from delusions and hallucinations. He is more susceptible to undue influence." Like not understand the rules for covid-19. CDC has determined that individuals with certain underlying conditions, including chronic kidney disease and obesity, are at increased risk of severe illness for COVID-19, and those with certain other conditions, such as hypertension, might be at an increased risk. See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical- conditions.html (last visited October 16, 2020).

He is continuing to struggle with aging medical problems. More importantly, and complicating his health condition, there is the potential impact of the coronavirus on our "overcrowded" prisons.

**Delta Variant/Omicron Variant**:

The Delta variant/Omicron variant which the world is still not got a hold on. As the fully vaccinated people are being asked to receive boost shots to control the Delta variant/Omicron variant. But the record in many district courts show that judges

7

are still granting inmates who are fully vaccinated. See (U.S V. Johnson, 2021 U.S. dist. Lexis 136614 SD NY July 12,  2021); see (U.S. V. Qadar, 2021 U.S. dist. Lexis 136980 ED NY July 22, 2021); see (U.S. V. Farrell, 2021 U.S. Dist. Lexis 1111 76 WD Wash. June 14, 2021); see (U.S V. Andrews, 2021 U.S. Dist. Lexis 131598 ED Tenn. July 21, 2021); see (U.S. V.  Darbyl 2021 U.S. Dist. Lexis 113267 ND OHIO June 17, 2021); see (U.S V. Samchuk, 2021 U.S. Dist. Lexis 117515 No. 2:12 -CR-00066-KJM ED Cal June 23, 2021). In sum, it is clear that the delta/omicron variant is sweeping through the states fast and fully vaccinated people are not immune.

It wasn't even three weeks ago that the BOP was doing a happy dance about having delivered the 200,000th shot of COVID vaccine. Only 29 inmates and 130 staff had the coronavirus, and only half of the institutions had a case.

The Delta/Omicron variant breakout comes amid increased concerns over slowed vaccination rates among prisons corrections staff.

The Crime Report last week said, "prison staff have refused the vaccine in vast numbers, leaving entire prison populations — and surrounding communities — at risk." According to the report, only 48% of prison staff members nationwide had received at least one dose. As of last Friday, the BOP staff vax rate was 52.4%, slightly lower than the 54.8% inmate acceptance of the vaccine.

Unvaccinated officers travel between, bringing the virus with them, according to Anne Spaulding, an associate professor in epidemiology at Emory University. Sick officers can also cause staff shortages (already a serious BOP problem), which reduces programming, recreation, and visitation. "It's going to affect the mental health of those incarcerated, who already have restricted lives," Spaulding said.

Federal workers and on-site contractors will have to attest to their vaccination status, the White House said. Those who don't must wear masks at work regardless of their geographic location and get tested once or twice a week for Covid-19. Employees who don't disclose being fully vaccinated also will be subject to work travel restrictions and must physically distance themselves from colleagues and visitors, the administration said. It is a fact that BOP staff widely ignore mask and distancing mandates, enforcement. Placing Osmakac at risk.

## II. The Sentencing Commission concluded that "extraordinary and compelling reasons" include those other than medical, age-related, or family circumstances:

The question whether compassionate release may be based solely on a change in sentencing law is a matter of statutory interpretation. A grant of compassionate release requires consideration of all 3553(a) factors, including post-conviction conduct. Osmakac' position argues that the changes to 18 U.S.C. § 3582(c)(1)(A)(i) made by the First Step Act have vested this Court with authority to identify the extraordinary and compelling circumstances that may warrant a sentence reduction.

Prior to the enactment of the First Step Act, courts could consider compassionate release only upon motion by the Bureau of Prisons. United States v. McCoy, ___ F.3d ___, 2020 U.S. App. LEXIS 37661, at *6 (4th Cir. Dec. 2, 2020) (citing 18 U.S.C. § 3582(c)(1)(A) (2012)). Since its enactment, "the Sentencing Commission has not updated its policy statement on compassionate release." United States v. Booker, 976 F.3d 228, 233-34 (2d Cir. 2020). Consequently, "[t]here is as of now no 'applicable' policy statement governing compassionate-release motions filed by defendants under the recently amended § 3582(c)(1)(A), and as a result, district courts are 'empowered . . . to consider any extraordinary and compelling reason

9

that a defendant might raise.'" McCoy, 2020 United States v. Zullo, 976 F.3d 228, 230 (2d Cir. 2020)) U.S. App. LEXIS 37661, at *27 (alteration and emphasis in original) (quoting United States v. Zullo, 976 F.3d 228, 230 (2d Cir. 2020)). In United States v. Jones, -- F.3d --, No. 20-3701, 2020 WL 6817488 (6th Cir. Nov. 20, 2020) and United States v. Gunn, -- F.3d. --, No. 20-1959, 2020 WL 6813995 (7th 2 Cir. Nov. 20, 2020). In those opinions, the Sixth Circuit and Seventh Circuit joined the Second Circuit, and held that U.S.S.G § 1B1.13 is not "applicable" to a § 3582(c)(1)(A) motion filed by a defendant, as opposed to the Bureau of Prisons.

The decisions in some districts to this effect are United States v. Clausen, 2020 WL 4260795, at *8 (E.D. Pa. July 24, 2020) (Pappert, J.) (the court will reduce a 213-year stacked 924(c) sentence based on the change in law and the defendant's "remarkable record of rehabilitation"); and United States v. Pollard, 2020 WL 4674126 (E.D. Pa. Aug. 12, 2020) (Beetlestone, J.) (compassionate release is available to address stacked 924(c) terms; the sentence is reduced to the 168-month term that would apply today for two 924(c) brandishing offenses. This is supported by the statute's history.

In United States v. Jones, -- F.3d --, No. 20-3701, 2020 WL 6817488 (6th Cir. Nov. 20, 2020) and United States v. Gunn, -- F.3d. --, No. 20-1959, 2020 WL 6813995 (7th Cir. Nov. 20, 2020). In those opinions, the Sixth Circuit and Seventh Circuit joined the Second Circuit, see United States v. Brooker, 976 F.3d 244 (2d Cir. 2020), and held that U.S.S.G § 1B1.13 is not "applicable" to a § 3582(c)(1)(A) motion filed by a defendant, as opposed to the Bureau of Prisons. As such, the Sixth Circuit and Seventh Circuit agreed that district courts are free to independently determine what constitutes an extraordinary and compelling reason

for a sentence reduction under the statute, without reference to the policy statement.

In Jones, the Sixth Circuit concluded that § 1B1.13 is not applicable to a defendant's motion after observing that the policy statement "does not reflect the First Step Act's procedural reforms to compassionate release," and finding that enforcing the policy statement as written is inconsistent with Congressional intent. 2020 WL 6817488, at *8. The court therefore concluded that district judges "have full discretion to define 'extraordinary and compelling' reasons without consulting . . . § 1B1.13." Id. at *9.

The Seventh Circuit similarly held in Gunn that "the Guidelines Manual lacks an 'applicable' policy statement covering prisoner-initiated applications for compassionate release," and so any discretionary decision by a district judge "is 'consistent with' [the] nonexistent policy statement." 2020 WL 6813995, at *2. It rejected the Department of Justice's argument "that this [reading] leaves district judges free to invent their own policies about compassionate release," explaining that those judicial decisions would be "subject to deferential appellate review." Id.

"[T]he First Step Act does not obligate a district court to consider post-sentencing developments," but "a district court retains discretion to decide what factors are

relevant as it determines whether and to what extent to reduce a sentence." United
States v. Osmakac, 975 F.3d 84, 92 n.36 (2d Cir. 2020).

The Court should allow for full review of information, that is, in making findings
related to sentencing information. Osmakac is entitled to an opportunity to present
objections to additional sentence determinations, and the application of sentence
enhancements that were used to calculate the amended guidelines and served as
part of the court's renewed consideration of § 3553(a) factors.  See, United States
v. Boulding, 960 F.3d 774,783–84 (6th Cir. 2020) ("While 'complete review' does
not authorize plenary resentencing, a resentencing predicated on an erroneous or
expired guideline calculation would seemingly run afoul of Congressional
expectations" thus requiring some form of participation of the parties to insure the
reliability of the determination.) Boulding recognized, as a panel in Osmakac has,
that a district court has discretion to consider all relevant factors. Boulding at 783;
United States v. Osmakac at 975 F.3d 84, 92 n. 36.

In Boulding even after the district court conducted a "considered analysis",
correctly compared the guideline calculation at the original sentencing with the
amended guideline range as it existed at resentencing and evaluated the § 3553(a)
factors anew, including Boulding's post-sentencing behavior as part of that inquiry,
the appellate court vacated the sentence and remanded to provide Boulding with an
opportunity to present his objections to its calculation of his amended guideline
range and in this respect because the denial of that opportunity by the court fell
short of the review envisioned by the First Step Act. Boulding, 960 F.3d at 784.

The instant case is similar to United States v. Zullo, supra., defendant Jeremy Zullo
filed a pro se motion requesting a sentence reduction under the First Step Act and
Compassionate Release. Unlike traditional grounds defendants typically raise in
their motions for relief under the First Step Act and Compassionate Release,

defendant Zullo requested a sentence reduction based on the following non-traditional grounds, i.e., extraordinary and compelling reasons: (1) his 15-year sentence was too long; (2) he was only 17 years old at the time of the offense; (3) his lack of any prior criminal record; and (4) a breach of the plea agreement by the government. Id.

In response to defendant Zullo's motion, the Government argued that Compassionate Release should be denied because it would be an abuse of discretion, if the district court granted a sentence reduction on the non-traditional grounds that defendant Zullo raised in his motion. In rejecting the Government's argument, the Second Circuit found that, as a matter of law, a district court would not abuse its discretion by granting Compassionate Release on non-traditional grounds because a district court has broad discretion in the area of considering all sentencing matters. See, United States v. Cavera, 550 F.3d 180, 188 (2nd Cir., 2008) (en banc) (noting a district court's "very wide latitude" in sentencing).

In sum, the majority of district courts to address this issue have found the authority to grant a reduction in sentence under the catchall provision, and indeed many have done so based on the same "extraordinary and compelling reasons" that the district court found present in United States v. McCoy, ___ F.3d ___, 2020 U.S. App. LEXIS 37661, at *6 (4th Cir. Dec. 2, 2020) (citing 18 U.S.C. § 3582(c)(1)(A) (2012)); United States v. Day, No. 1:05-cr 460-AJT, ECF No. 257 at 23–24 (E.D. Va. July 22, 2020) (holding that the "gross disparity" between the sentence the defendant received and the sentence he would receive under the law today qualified as an extraordinary and compelling reason for compassionate release); United States v. Adeyemi, No. CR 06-124, 2020 WL 3642478, at *15 (E.D. Pa. July 6, 2020)( finding that "[b]ecause the Sentencing Commission has not amended its policy statement or commentary after the passage of the First Step

Act, and Note 1(D) contradicts the First Step Act's amendment to section
3582(c)(1)(A)(i), [district courts] may independently determine extraordinary and
compelling reasons in line with the rest of the Commission's commentary not
rendered contradictory to federal law."); United States v. Quinn, No. 3:91-CR-
00608, 2020 WL 3275736, at *4 (N.D. Cal. June 17, 2020) (joining "numerous
other courts" and holding that the First Step Act empowered district courts to
consider "enormous sentencing disparit[ies] created by subsequent changes to
federal sentencing law" as an "extraordinary and compelling reason" for
compassionate release); United States v. Lott, No. 95-CR-72, 2020 WL 3058093,
at *2 (S.D. Cal. June 8, 2020) ("[T]he Court finds that [the sentencing guideline]
provisions are not a limitation upon the Court's ability to determine whether a
defendant has presented extraordinary and compelling reasons for a sentence
reduction under 18 U.S.C. § 3582(c)(1)(A)"); United States v. Scott, No. 95-CR-
202, 2020 WL 2467425, at *3 (D. Md. May 13, 2020) ("While Sentencing
Commission and BOP criteria remain helpful guidance, the amended §
3582(c)(1)(A)(i) vests courts with independent discretion to determine whether
there are "extraordinary and compelling reasons" to reduce a sentence."); United
States v. Arey, No. 5:05-CR- 00029, 2020 WL 2464796, *4 (W.D. Va. May 13,
2020) (the First Step Act revised § 3582(c) to vest the court with "independent
discretion" to find extraordinary and compelling circumstances that warrant a
reduction of sentence); United States v. Marks, No. 03-CR-6033L, 2020 WL
1908911, at *17 (W.D.N.Y. Apr. 20, 2020); United States v. McPherson, No. 94-
CR-570, 2020 WL 1862596, at *4 (W.D. Wash. Apr. 14, 2020); United States v.
Wade, No. 2:99-CR-00257, 2020 WL 1864906, at *5 (C.D. Cal. Apr., 13, 2020)
("A growing number of district courts . . . have concluded that, in the absence of
applicable policy statements, courts can determine any extraordinary and
compelling reasons other than those delineated in U.S.S.G. § 1B1.13 warrant

sentence modification.") (citations omitted); United States v. Young, No. 2:00-
CR-00002-1, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020) (determining
that courts "have the authority to reduce a prisoner's sentence upon the court's
independent finding of extraordinary and compelling reasons"); Maumau, 2020
WL 806121, at *4 (finding that "[u]nder the First Step Act, it is for the court, not
the [BOP], to determine whether there is an 'extraordinary and compelling' reason
to reduce a sentence"); Ebbers, 432 F. Supp. 3d at 433 n.6 ("[T]he First Step Act
reduced the BOP's control over compassionate release and vested greater
discretion with the courts. Deferring to the BOP would seem to frustrate that
purpose"); United States v. Urkevich, No. 8:03-CR-37, 2019 WL 6037391, at *1
(D. Neb. Nov. 14, 2019) ("The First Step Act also amended 18 U.S.C. § 3582. In
Section 603 of the Act, congress amended § 3582(c)(1)(A) to permit defendants to
move a sentencing court for modification of sentence"); United States v. Cantu-
Rivera, No. CR H-89-204, 2019 WL 2578272, at *2 n.1 (S.D. Tex. June 24, 2019)
(finding the court had the authority to determine that the defendant was entitled to
relief under the catch-all provision in the commentary to § 1B1.13).

## III. Authority to reduce minimum sentence on a Compassionate Release motion:

Congress has spoken, and this time it has given trial judges broad authority –
indeed it has imposed a statutory duty, upon a defendant's motion– to conduct an
individualized review of the defendant's case for extraordinary and compelling
circumstances that call out for correction. See United States v. Brooker, 976 F.3d
228, 237-38 (2nd Cir., 2020) (holding that a court should consider "all possible
reasons for compassionate release", including the "injustice of [a defendant's]
lengthy sentence"). See e.g., Lockerbie Bomber that bomb Pan Am Flight 103

killing 270 people 189 of them Americans served only 8-years and was released.
See, United States v. Haynes, 456 F. Supp. 3d 496 (2020).

It is undisputed that the express language of the First Step Act, which creates the
courts' ability to modify a past sentence based on extraordinary and compelling
reasons, contains no express prohibition on granting compassionate release to
inmates who are serving a mandatory minimum sentence. Furthermore, this Court
and others have routinely granted compassionate release to inmates serving a
mandatory minimum sentence and have declined to read such a prohibition into the
statute. In Brooker, the Second Circuit reversed the lower court's denial of the
inmate's compassionate release motion even though the inmate was serving a
mandatory minimum sentence. 976 F.3d 228 (2nd Cir., 2020).

Shortening Osmakac' sentence does not undermine the seriousness of the offense,
or fail to respect the law, provide just punishment, or adequately deter criminal
conduct. In sum, Osmakac's sentence was a product of misinterpretation of the law
and under today's sentencing scheme, the Court would not have the authority to
give him such a long and harsh sentence. Additionally, courts have found that
compassionate release for defendants who have served the significant majority of
their sentences does not undermine sentencing goals. See, e.g., United States v.
Clark, 97 Cr. 817 (DC), at *10-11 (S.D.N.Y. Mar. 18, 2021) ("shortening Mr.
Clark's sentence does not undermine the seriousness of the offense, or fail to
respect the law, provide just punishment, or adequately deter criminal conduct…,
Mr. Clark's sentence was a product of the then-mandatory Sentencing Guidelines
and under today's sentencing scheme, I would not have given him such a long and
harsh sentence.")

Additionally, defendants whose conduct is similar or worse than Osmakac's who
have committed murder, drug trafficking, racketeering, shootings, or even?

16

terrorism offenses, routinely receive far less than 480 months without parole sentences. Osmakac received longer sentences than each of the defendants: United States v. Victor Alvarez, 1:93-cr-00181(PKC) (defendant sentenced to 30 years for seditious conspiracy, in Violation of 18 U.S.C. § 2384, bombing conspiracy, in Violation of 18 U.S.C. § 371, attempted bombing, in Violation of 18 U.S.C. §§ 844(i) and 2, interstate transportation of a firearm, in Violation of 18 U.S.C. §§ 924(b) and 2, and using and carrying a firearm in commission of a violent offense, in Violation of 18 U.S.C. §§ 924(c) and 2); United States v. Todd Labarca, 11- Cr-00012 (RMB) (defendant sentenced to 23 years for racketeering in Violation of 18 U.S.C. § 1962(c) based on predicate acts including conspiracy to murder Martin Bosshart, marijuana trafficking, ecstasy trafficking, extortion conspiracy, illegal gambling business and conspiracy to commit assault in Violation of 18 U.S.C. § 1959(a)(6) relating to the murder of Martin Bosshart), United States v. James Diaz, 17-Cr-21 (JWP) (defendant sentenced to 18 years for narcotics conspiracy and 18 U.S.C. §§ 924(c) who participated in the conduct that resulted in the death of Jose Morales and the shooting of Edwin Romero on December 11, 2016 as part of the narcotics conspiracy; United States v. Jaquan Walters, 15 Cr. 644 (AJN), (defendant convicted of narcotics trafficking received 25 years for shooting and murdering victim over a marijuana debt); United States v. Peter, et al, 17-Cr-00054 (NRB) (defendants convicted of marijuana trafficking conspiracy and 18 U.S.C. §§ 924(c) and (j) received sentences of 23, 23 and 20 years for shooting and murdering a customer); Josnel Rodriguez (appeal is 17-3283cr) received 20 years from Judge Cote following 924(j) conviction for aiding and abetting murder at a cookout in the Bronx, Alvarado Dominguez (SDNY before Caproni) received well less than life for murder. Deandre Morrison in 18-cr-41 (DLC) received total of 318 months for narco conspiracy and RICO conspiracy and one of the predicates that he admitted to was murder. Terrill Staton in 15-cr-456 (NRB) received a total

of 276 months for narco conspiracy and Hobbs Act robbery resulting in murder. Both SDNY. IN EDNY, Tyvon Bannister in 17- cr-116 (BMC) received a sentence of 30 years based on a plea in which gov't and defense agreed and court ultimately accepted, that appropriate sentence was 30 years. Involved execution style murder.

Osmakac's conduct is materially different from the above cited defendants (no murder) yet his sentence is far more severe.

THE AFFECT OF THE FIRST STEP ACT:

The Supreme Court has since issued its decision. Concepcion v. United States, ___ S Ct. ___, 2022 WL 2295029 (June 27, 2022). The question before the Supreme Court was whether a district court must consider intervening changes of law (such as changes to the Sentencing Guidelines) or changes in fact (such as behavior in prison) in adjudicating a First Step Act motion. Concepcion, 2022 WL 2295029, at *4. The Court held that if a defendant is eligible for a reduced sentence under Section 404(a), the district court must consider (i.e., acknowledge) intervening changes of law and fact brought to its attention by the defendant in deciding whether to grant a reduction. See id. at *4, *12. In other words, just as this Court must do in a post-Booker initial sentencing proceeding, it must acknowledge nonfrivolous mitigation arguments raised by the defendant. The District Courts must consider intervening changes of law and fact when parties raise them.

In drafting this piece of legislation Congress recognized the long ongoing battle for prison reform due to the harshness of the federal sentences.  Congress sought to allow the district courts to revisit sentences on a case by case basis and determine whether new facts and new laws, post facto, created "extraordinary and compelling" reasons to reduce a sentence, particularly in light of the insufferable restrictions of 28 U.S.C. Section 2244 (i.e. AEDPA).  To cure this long lingering

illness Congress carved out a form of "safety valve" for modifying sentences that was previously available via federal parole, which had been abolished.

Defendants that could not previously apply for relief based on changes in law such as Apprendi and Alleyne, which constituted a fundamental deprivation of a constitutional right, due, primarily, to the AEDPA, can now seek justice from the district courts.

The sum of these parts is that the Supreme Court's ruling in Concepcion v. United States the district Courts now return to its pre-Comprehensive Crime Control Act status of again being empowered to modify sentences where it determines that "extraordinary and compelling" reasons exists.  And, Concepcion makes clear that it is for the district court to determine on a case by case basis what it deems extraordinary and compelling reviewing any and all new facts and changes in law that have occurred since the initial sentencing and applying the Section 3553(a) factors to the new set of facts and circumstances.

The standard for adjudicating a motion under 18 U.S.C. Section 3582(c)(1)(A) is for the district court to "consider intervening changes in law or fact and use its [unfettered] discretion" to determine whether a sentence can be modified, Concepcion v. United States, supra.

DISCUSSION:

When the dust settles, and the Court wades through the facts and legal propositions that have changed since the initial sentencing, the question will be whether these changes in law and fact constitute "extraordinary and compelling circumstances" sufficient to justify a modification of the sentence. See also, Concepcion v. United States, No. 20-1650, Slip Op. at 18 (U.S. June 27, 2022) ("[T]he First Step Act [does not] require a district court to make a point-by-point rebuttal of the parties'

19

arguments. All that is required is for a district court to demonstrate that it has considered the arguments before it."). Thus, this Honorable Court should consider all facts and legal propositions that have changed since the initial sentencing. United States v. Thatch, No. 20-6364 (4th Cir. Jun. 30, 2022).

The court must balance Petitioner's rehabilitation efforts with his extremely serious criminal conduct, the need to punish him, the need to promote respect for the law, the need to protect society, and the need to deter others. Cf. Concepcion v. United States, No. 20-1650, 2022 WL 2295029, at *12 (U.S. June 27, 2022); Pepper, 562 U.S. at 480-81. The court also has considered Petitioner's potential exposure to CO VID-19, his natural antibodies, his vaccine, his medical conditions, his age, and his release plan. United States v. Taylor, 4:14-CR-13-D (E.D.N.C. Jun. 27, 2022); and United States v. Ward, 5:11-CR-286-D (E.D.N.C. Jun. 28, 2022).

Reasons for Motion and request for Counsel:

Coupled with the changes in the law (and the fact that Osmakac is filing this motion pro-se); With More Than 300,000 Prisoners Locked Down. Prisoners struggle to get their medical records and the necessary document for exhaustion of remedies. Inmates are locked in their cells 23 hours, relying on in-person, confidential meetings with staff (i.e., counselors, case managers, unit officers, or lawyers) is extremely difficult, although not impossible. The law library is closed, no copy machines are available to make duplicate copies, the commissary is often closed, thus making stamp purchase impossible, and untimely mailing services, all of these circumstances making the exhaustion of Administrative Remedies nearly impossible. See, Carmona v. U.S. Bur. of Prisons, 243 F.3d 629, 634 (2d Cir. 2001) (while prior to filing a habeas corpus petition under § 2241 "federal prisoners must exhaust their administrative remedies [w]hen, however, legitimate

circumstances beyond the prisoner's control preclude him from fully pursuing his
administrative remedies, the standard we adopt excuses this failure to exhaust").

The Federal Bureau of Prisons (BOP) is now on rigid national lockdown due to
quarantine constraints amid the rapidly escalating public health crisis COVID-19.
Therefore, Osmakac do not have the opportunity to follow all the rules, procedures,
and make all deadlines. Notable, in this case Osmakac is considered to have
exhausted all administrative remedies in an application for compassionate release
following a denial by the BOP. Osmakac filed a compassionate release request
through appropriate channels at the BOP. His request was denied. Thus, the motion
is now properly before this Court.

OSMAKAC'S RIGHT TO TRIAL:

In finding that extraordinary and compelling reasons exist, the Court may also
consider the significant trial penalty imposed upon Osmakac for exercising his
right to jury trial.

Osmakac received a mandatory sentence not due to his actual culpability in the
offense, but because of a trial penalty and the exercise of his right to a jury trial. In
United States v Haynes, 93-01043 (E.D.N.Y., April 22, 2020), the district court
granted a defense motion for reduction of sentence to time served. In its opinion,
the Court discussed the issue of a trial penalty as follows:

As this order is signed, Haynes will have been in federal custody for almost 27
years as a result of his only foray into serious criminal behavior. Those years, as
discussed, are far beyond what the United States Attorney determined was a
suitable sentencing range when offering Haynes, a plea....

The insistence of most federal offenders on a trial are no doubt ill-advised, more
likely foolish in light of the available evidence and the government's distinct

advantage in trying/using uncharged crimes and relevant conduct. The same thing can be said about Osmakac's decision to reject any offer from the government in this case. As in Haynes, it was "ill-advised [and] more likely foolish" in light of the evidence against Osmakac. But, as in Haynes, it was also a constitutionally guaranteed decision that resulted in a significant trial penalty. And this Court has the right to consider that trial penalty in granting the requested relief.

Furthermore, because he may be subject to removal from the United States. If released Osmakac will be transferred to immigration detention and deported. This lessens any potential danger he may pose. United States v. Barriga-Beltran, No 19-cr-0116 (JS) 2021 U,S. Dist. Lexis 67786, WL 1299437, at *3 (EDNY, Apr, 7, 2021) (finding a defendant posed no danger because of immigration detainer), Rios 2020 U.S. Dist, Lexis 230074, 2020 WL, 7246440, at *5 (collecting cases where district courts modified life sentence for defendants who were set to be deported if released.)

In sum, Osmakac does understand the Court's reasoning in its initial denial (i.e. seriousness of the offense) and does not seek to downplay that factor in any way. However, Osmakac respectfully requests that the Court take a good look at the cases cited in his initial motion where defendants were granted compassionate release with materially similar circumstances and many cases of worse conduct.  In those cases, the Court applied the Section 3553(a) factors in a post sentencing analysis to determine whether the defendant was then worthy of compassionate release.  Osmakac would like the Court to consider the relief given to all of the similarly situated defendants.  The Concepcion decision was issued after Osmakac had filed his initial compassionate release motion.  Thus, had Concepcion been available and argued, this Court may have granted Osmakac Compassionate

release considering the changes in law and fact, in conjunction with the age and medical condition of the defendant.

**<u>Appointment of Counsel:</u>**

Osmakac also, moves this Honorable Court to appoint counsel to represent his interest in obtaining relief in this very important matter.

1). Osmakac is a layman, uneducated, (receiving assistance from a "jailhouse lawyer ") and is unable to adequately submit legal arguments on his own behalf. Further, Osmakac is incarcerated, indigent and as such prudence and fairness requires the Appointment Of Counsel under 18 U. S.C. 3006A.

2). With More Than 300,000 Prisoners Locked Down. Prisoners struggle to get their medical records and the necessary document for exhaustion of remedies. Inmates are locked in their cells 23 hours, relying on in-person, confidential meetings with staff (i.e., counselors, case manager or unit officers) is extremely difficult, although not impossible. The law library is closed, no copy machines are available to make duplicate copies, commissary is often closed, thus making stamp purchase impossible, and untimely mailing services, all of these circumstances making legal assistances nearly impossible.

3). In this case, counsel is needed to get all of Osmakac's medical record and BOP relevant documents.

Wherefore, in the interest of justice Osmakac ask for appointment of counsel in this case in accordance with 18 U.S.C. 3006A.

CONCLUSION

WHEREFORE, for all the reasons stated above, Osmakac humbly requests this Honorable Court to grant his motion for compassionate release and reduce his sentence to time served.


Respectfully Submitted,

_____

SAMI OSMAKAC, pro-se


**CERTIFICATE OF SERVICE**


The undersigned hereby certifies that, on September 24th, 2022 the foregoing MOTION FOR COMPASSIONATE RELEASE and REQUEST OR APPOINTMENT OF COUNSEL was served upon the U.S. Attorney for the Middle District Florida via U.S. mail and pre-paid.

_____

Sami Osmakac